Mr. Holt. Thank you, your honor. May it please the court. I'm Aaron Holt and I represent the appellant Marcelino Williamson. Mr. Williamson was arrested at a car wash in Mena, Arkansas. Officer Myers of the Mena Police Department pulled into the car wash to serve an outstanding warrant for his arrest and Mr. Williamson was getting out of his pickup truck at the time. As Officer Myers was putting Williamson into the back of his police cruiser, Sergeant Richardson from the Mena Police Department arrived at the scene, opened up the driver's door of Williamson's truck and began to search. He quickly found a nine millimeter pistol tucked between the truck's and Mr. Williamson was charged with unlawful possession of that handgun because he was subject to a domestic restraining order at the time. Sergeant Richardson began the search, as he said, because the Mena Police Department had a policy of towing a vehicle every time they arrested its driver with very few exceptions. Mr. Williamson moved to suppress the pistol, arguing that the decision to impound his truck was not made in accordance with the written towing policy of the Mena Police Department. Officer Myers and Sergeant Richardson testified their department had an unwritten policy that they would tow, like I said, that they would tow a vehicle every time they made a traffic stop and arrested its driver. This unwritten policy, according to Mr. Williamson, contradicts the written policy that applied in this case, which provides that when a vehicle is abandoned on private property, the property owner is responsible for towing the vehicle. Chief Judge Smith, as you were saying earlier, this is the case in which the government has argued and the court concluded that that written policy was incomplete. While the written policy did provide for what to do in case of, for example, a DWI or DUI arrest, it did not specify what happens in case of every custodial arrest. But again, it's clear written policies in these kinds of situations are preferable to unwritten policies. Is there a prohibition to unwritten policies or is there any consequence to the policy being unwritten? Your Honor, this court has made it clear that unwritten policies are acceptable, that testimony concerning what the policy and practice is, it's acceptable. But this court has also made clear in United States versus Rowland that law enforcement's written policy may not be, quote, eroded by unwritten practice. They said the court in Rowland was looking for some case somewhere. Basically, they said, we have not found any case that allows for written policy to be eroded by unwritten. So I think that's the real issue here is that when there is written policy, it governs. And if the written policy is found to apply to the situation, the written policy governs over any unwritten. I think that makes plenty of sense. For example, in Rowland, the government's argument that a police department's unwritten practice of only documenting significant property that was located in the search of a vehicle during an inventory report should be found to control over its written policy that said it should record all property in the vehicle. So in this case, we've got an example of a vehicle that is being abandoned. According to our position, it's being abandoned on private property. There's no dispute that the car wash was private property. And really, the issue is the meaning of abandoned. The district court found, well, this property hasn't been abandoned because they arrested him while he was getting out of it. And it's not being abandoned for that reason. And in response to that, I would point to the Arrocha decision, United States versus Arrocha, this court's decision there, where the court referred to the situation of a vehicle being abandoned or two vehicles being abandoned in a gas station parking lot because of an arrest. So it's clear that the term was abandoned on private property. It was going to be left unattended. I think that's something that happens in these types of cases is that the term abandoned can refer, can essentially be a synonym for being left unattended or without the owner. And so we believe that's the situation that applied here. It was about to be abandoned. What about the definition of abandoned or abandoned vehicle, excuse me, in the Arkansas statutes, 2750-1202, which seems to not recognize that it's abandoned in these circumstances. Your Honor, I would agree that it does not qualify as abandoned under the statute. And what I would point to is that in the Minneapolis Police Department towing policy, they do reference that statute in one subsection, and they refer, I believe it's subsection A-3, and they refer to the definition of public way that's found at that statute. I would say that that indicates that when the Minneapolis Police Department, the chief of police or whoever enacted this written policy, when they wanted to refer to a definition in the Arkansas statutes, they knew how to do it, and they did it in another section referring to public way, but there's nothing in the department policy that defines abandoned or unattended vehicles. So I don't think, especially because another section does refer to a specific definition, the fact that the section that we're looking at, subsection A-8, doesn't refer to, doesn't purport to define that term in accordance with Arkansas law or otherwise. I think we're just looking at what the plain meaning of the word is. I guess my question then is you turn to our case law that defines abandoned, and I'm not sure that we're trying to give a one-size-fits-all abandoned vehicle or abandoned definition in that case, but it seems to me that if you're looking for plain and ordinary meaning, the first place to look, at least given a choice between our case law and an Arkansas statute, given that this is in Arkansas, would be an Arkansas statute. Why is that line of reasoning wrong? Well, again, I just think that when we're looking at plain and ordinary, that's how it's used. If the court, for example, is using it in that sense in the Arrocha case, I believe it indicates that it can be more expansive than what is included in the statutes. Honestly, I would say that when you look at the policy as a whole, I think there are other places where if you had to hew to the strict statutory definition of these terms, the policy wouldn't necessarily make sense in certain things. When it talks about private owners being able to tow abandoned vehicles, well, the private owner, I don't think they're going to assume that it has to be left there for 30 days without any indication of the owner's intent to return. I think that's how I would respond to that. I want to move on and make another quick point. Overall, the unwritten policy, like I said, we argue that it conflicts with written, but also the unwritten policy is unreasonable in and of itself. It's unconstitutional to tow every time you have an arrest of a driver for that to be the default position. When you have that kind of a policy, that policy is disconnected from the community caretaking concerns that justify police being able to impound vehicles in the first place. There was no consideration of whether there was any danger to this vehicle. Did you make that argument to the district court? Your Honor, I don't recall that specific argument was raised in the motion to suppress. I don't believe it was specifically set forth, but we did. I think we just talked about it being unreasonable, the impoundment being unreasonable and not in conformance with policy, with written policy. Again, I just think that this kind of unwritten policy goes too far. It is essentially allowing for an institutionalized excuse for general rummaging. The fact that the police department can say, well, we're just going to search your vehicle any time we arrest the driver, it's just unreasonable. I cited at least one case, the de Guay case from the Seventh Circuit that indicates that. I'd like to reserve the remainder of my time for rebuttal unless there's additional questions. Thank you, Mr. Holt. Ms. Taylor? Good morning, Your Honors. May it please the court, Mr. Holt, I'm Assistant United States Attorney Candace Taylor, and I represent the United States in this matter. The district court did not err in denying the defendant Marcellina Williamson's motion to suppress evidence, and that decision should be affirmed by this court for the following reasons. The Mena Police Department had a standard policy regarding impounding and towing a vehicle after a custodial arrest was made after a traffic stop, and on July 8th, when Officer Myers arrested Mr. Williamson, they followed that procedure. The lawful inventory search doctrine is well recognized as an exception to the Fourth Amendment search warrant requirement, and it encompasses three distinct police actions. Counsel, before you move on, I just want to, you said it was a policy, an unwritten policy, and I just want to ask about it. My recollection, and I hope I have the right case, is that they said that 96%, the officer said 96% of the time, or 97% of the time, this is what we do in a custodial arrest situation, and, you know, accepted out things like you go into Walmart and you're away from the vehicle, so therefore there's no need to tow it at that point. Is that really a policy, or is that a practice? And maybe it's settled under our case law, but when I say we do this 95% of the time, in my chambers, that doesn't mean there's a policy. It's just what we do most of the time. So I guess that's my question. Well, first of all, the instance where someone would go, I think the custodial arrest of someone with a car is more narrow initially than what you were saying based on their testimony, because the instance of someone going into Walmart and being arrested and the fact that they have a vehicle in the parking lot, that doesn't fall under MENA's policy. It's when an actual traffic stop is made and there's a custodial arrest. They did testify, both officers, that it was a less than 5% variance from that, but they had instances where they could. The Morris case talked about the police department having a policy of impounding and searching after a custodial arrest of a driver. This court seemed to take no issue with it at that point. I think what's really important is that MENA had a standard policy that they followed, which based on the case law is equally important. They did describe instances where another person could be in the car that could take the car, and they would allow that to happen. But generally speaking, they felt it was and that they protect the occupant's valuables or property which may be in the car. The reason why I'm asking the question is I am troubled. I'm not troubled about our cases where we say there's an unwritten policy and there's no written policy. I'm a little more troubled by our cases, to be quite honest with you, and I think defense counsel pointed out one where we try to scale it back, where we say the unwritten policy supplements the written policy. Then why isn't it in the written policy? And so when then the testimony comes back and says, well, 97, we'll give them the benefit, 97, 98 percent of the time, this is what we do. I'm a little skeptical that that's a policy. But I understand your position. I think that the testimony of the officers described a lot of other times where they did not inventory and tow a vehicle, but indeed their testimony was that when it was a traffic stop, a traffic stop made, and there was a custodial arrest of the driver, then they did impound and tow. What we don't know is how many times that occurs, how many of the arrests that they make involve the custodial arrest of a driver versus a driver being cited out. So I think there's some missing information if we were going to say it's something that they do all the time because we are a police department. The custodial portion of it is the missing bit of information. If the inventory search exception is lawfully applied, it serves three governmental interests, and that's, as we've talked about, protecting the owner's valuables, protecting the police from claims of theft or damage that are untrue, and protection of the police from danger. The court can look at a totality of the circumstances and determine whether that is reasonable. Even if the police fail to adhere to a standardized process, the search can nonetheless be reasonable provided it's not a pretext for an investigatory search, and I think that that's very important in this case because Judge Holmes heard the testimony of Officer Myers and Sergeant Richardson regarding the police department's policy and procedure on impounding and towing and their decision to search that vehicle. Both of them indicated they were not expecting to find any contraband, any evidence of a crime, and particularly not a firearm that morning. So they had no investigatory purpose in the decision to impound and search that vehicle, and there's no indication in the record otherwise. I know that Mr. Williamson made that argument in his brief that there was some sort of pretextual reason for the search, but that's just not borne out by the testimony of the officers and certainly not in the credibility finding of the court in that matter. I also think, Your Honor, that the questions regarding the Arkansas statute on unattended vehicles and abandonment and the issue of whether or not the unwritten policy followed by MENA PD conflicts with the written is very important because I would submit that deals with abandoned vehicles is more guideline for what the police department to do should a business owner contact them and say there's a car left on my parking lot, what should I do with it? It's not about making a custodial arrest and removing a driver and based on police action, leaving a vehicle unattended or abandoned if you were in a business parking lot. It's nonsensical to say that section AA applies to instances after a traffic stop and a custodial arrest is made because if that's the case, then the police department, regardless of whether they pull someone over, be it the Walmart parking lot or in front of a car wash bay, could then with no recourse just leave cars everywhere blocking businesses and push it off onto the owner of it and that would definitely not comport with the police's requirement and their caretaking duties. It would shut down businesses. It would provide no safekeeping of a defendant's property. I do think as well that the definition of abandonment is equally important. The statute referenced within the written policies of the Mena Police Department had unattended and attended referenced within the Arkansas statute and there's a difference between the two and I think the points made by this court in argument this morning about the common sense definition of abandonment is important. The Rocha case dealt with the Missouri statute which had a specific definition of it. The Arkansas statute is different and it requires for abandonment that you have some, not only is it unattended, but you must exercise some intention to not come back for it and that was just not the case that that morning. There's no evidence whatsoever, no testimony from Mr. Williamson as it were or anyone else that he intended to leave his vehicle there at the car wash after his arrest and not come back for it. So I think that's very important in looking at whether or not the unwritten policy which Mena Police Department followed conflicted with their written policy. Unless the court has any other questions, I would defer the rest of my time. I don't see any. Thank you, Ms. Taylor. Mr. Holt. Thank you, your honor. I want to turn to the issue brought up by Ms. Taylor of pretext. There was in fact some indication in the record that their unwritten policy that they described or their unwritten practice of towing every time they arrested the driver. One of the reasons they did that was because leaving a vehicle on the side of the road or letting someone come get it could, quote, put a case in jeopardy. During cross-examination, Officer Myers acknowledged that part of the reason for wanting to tow the vehicle every time they made an arrest was to make sure they make every case they can. So there is a clear evidentiary investigative motive even to the unwritten practice that they had. And again, I think that's really important here is that when you have that kind of a practice where you say, we're going to tow it every time, that's our default. It's an excuse for them being able to rummage around in the vehicle every time they make an arrest. And I see my time's expired, so unless there are any other questions, we just ask that the court reverse the district court's order denying the motion to suppress. I don't see any questions. Thank you, Mr. Holt. Thank you also, Ms. Taylor. The court appreciates both counsel's argument to the court this morning and will take the case under advisement and render decision. All right, Madam Clerk, I believe that concludes our scheduled arguments for this day. Is that correct? Yes, Your Honor, but in addition to those oral arguments, we had two oral arguments. Thank you. All right, I believe that also concludes our court docket for this week and that being the case, the court will be in recess until further call.